EVA MITCHELL, PLAINTIFF-APPELLANT, v.
ARNETT SIMMONS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 30, 1978—Decided December 26, 1978.

512

Before Judges Pressler and King.

Messrs. *Klitzman, Klitzman & Gallagher,* attorneys for appellant (*Mr. Louis Garippo, Jr.,* on the brief).

Messrs. *Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys for respondent (*Mr. Michael J. Cernigliaro* on the brief).

The opinion of the court was delivered by

King, J. A. D. Plaintiff appeals from the trial court's dismissal of her personal injury action at the conclusion of her case. Plaintiff was a tenant under a month-to-month oral lease of a second-floor apartment located in a single-family dwelling unit in the City of Asbury Park. Plaintiff first began living in the apartment in 1958. In December 1974 she tripped and fell on defective linoleum flooring in her private hallway.

Plaintiff relied solely on her own testimony to establish liability. She said that when she moved into the apartment the floor covering "was nice". Over the years the linoleum

covering "wore out" in the hallway, the kitchen and the front room. Plaintiff complained to defendant landlord and in 1972 he supplied enough linoleum to recover the floor in the kitchen and the front room. The landlord merely supplied the linoleum and, pursuant to her agreement with him, several of plaintiff's friends installed the materials. Thereafter up until the fall in December 1974 plaintiff continued to press the defendant for linoleum to cover the hallway. She testified that the hallway floor "was in badder shape than either" the kitchen or front room in 1972. In response to her requests plaintiff said her landlord merely replied, "I do it later, later" and "well later for that." Defendant personally observed the deteriorated condition of the hall floor on many occasions.

When confronted with defendant's motion to dismiss, the trial judge concluded that defendant's promise to provide linoleum to repair the defective hallway flooring constituted a divisible undertaking distinct from his having supplied floor covering for the kitchen and the front room. The trial judge said: "I do not think that it was the same arrangement. I think she thought that she was entering into a similar one. The arrangement never fully ripened, because the material was never provided; and it was never put down." He concluded that there "is no contract that the jury would have to consider" and dismissed the case.

We respectfully disagree with the trial judge's analysis of the record. Although plaintiff's testimony is somewhat disjointed, we conclude that a jury could have reasonably believed that the landlord agreed in 1972 to furnish linoleum for the kitchen, front room and hallway, but neglected to complete the entire undertaking. For instance, we note the following testimony:

Q. What was the condition of the linoleum in the hallway at the same time when he purchased the linoleum for the kitchen and for the front room?

A. It was in badder shape than either of them. He said he would get more later.

Q. Did you ever specifically ask him to fix the linoleum in the
hall?
A. Yes, I did.
Q. What did he say?
A. He said I do it later, later.

We conclude that if the jury accepted the theory that the
landlord agreed to provide linoleum for the two rooms and
the hallway, but only partially performed, neglecting to
provide for the latter, legal responsibility could attach for
injuries negligently caused thereby under § 357 of the
*Restatement, Torts* 2d (1965), which has been the law of this
State since at least *Michaels v. Brookchester,* 26 *N. J.* 379,
383 (1958). This section states:

A lessor of land is subject to liability for physical harm caused
to his lessee and others upon the land with the consent of the
lessee or his sublessee by a condition of disrepair existing before
or arising after the lessee has taken possession if
(a)  the lessor, as such, has contracted by a covenant in the lease
or otherwise to keep the land in repair, and
(b)  the disrepair creates an unreasonable risk to persons upon
the land which the performance of the lessor's agreement
would have prevented, and
(c)  the lessor fails to exercise reasonable care to perform his
contract. [Emphasis supplied]

In the leading New Jersey cases applying § 357 the
"contract to repair" and its supporting consideration were
specifically found either in the initial written lease agree-
ment, *Faber v. Creswick,* 31 *N. J.* 234, 242 (1959), or
implied therefrom, *Michaels v. Brookchester, supra,* 26 *N. J.*
at 390.

In the present case there is no written lease from which
any contract to repair may be derived. Therefore, the "or
otherwise" language of § 357(a) is pertinent. We conclude
that if the jury had found that defendant had partially
performed his undertaking to supply linoleum for areas in
need of flooring and made repeated oral promises, in response
to plaintiff's persistent adjurations, to supply more for the

dangerous hallway "later," there was an enforceable "contract * * * otherwise to keep" the apartment floor repaired within the meaning of § 357 of the *Restatement*. Adequate consideration to support the promises to repair could have been found in plaintiff's successive renewals of her month-to-month tenancy between 1972 and December 1974 in expectation that the hallway flooring as well would be fixed. Plaintiff had the right to terminate at any time on one month's notice. The record is susceptible of the inference that she held over at least in part because she anticipated that her landlord would complete the balance of his agreement to repair. We agree with *Deveaux v. Spekter*, 150 *Conn.* 418, 190 *A.* 2d 484 (1963), in which faced with similar circumstances the Connecticut Supreme Court of Errors stated:

> The jury could reasonably find that the defendant, in consideration of the tenant's occupancy of the premises for a succeeding term and the payment of the rent for that term in advance, agreed to repair the defective . . . [conditions] . . . [and] that there was adequate notice of and opportunity to correct the defects, and that as a result of the failure to make repairs, the plaintiffs sustained the injuries and damages complained of. [at 486]

See also, *Maday v. N. J. Title Guar. & Trust Co.*, 127 *N. J. L.* 426 (Sup. Ct. 1941), aff'd 129 *N. J. L.* 53 (E. & A. 1942); *McKenzie v. Egge*, 207 *Md.* 1, 7–10, 113 *A.* 2d 95, 98–99 (Ct. App. 1955); *Wiley v. Dow*, 107 *So.* 2d 166, 170 (Fla. App. 1958).

For these reasons, we conclude that the record at the time of the motion to dismiss viewed with all inferences drawn favorably for plaintiff would support a theory of liability under § 357 of the *Restatement, Torts* 2d.

Reversed and remanded for trial.